NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DAMIEN RAMSEY, *Appellant.*

No. 1 CA-CR 24-0661

FILED 12-19-2025

Appeal from the Superior Court in Maricopa County
No.  CR2023-132555-001
The Honorable Suzanne Marie Nicholls, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Vingelli & Company, Law Offices, PLLC, Scottsdale
By John N. Vingelli
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Anni Hill Foster and Judge Veronika Fabian joined.

_____

**M O R S E**, Judge:

¶1        Damien Ramsey appeals his convictions for two counts of aggravated assault and one count of disorderly conduct. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In July of 2023, Ramsey fired his gun in a confrontation at a Tempe laundromat. Ramsey hit one victim 15 times, requiring doctors to amputate the victim's leg. The State charged Ramsey with two counts of aggravated assault, one count of disorderly conduct, and one count of endangerment.

¶3        Before trial, Ramsey's counsel moved for an Arizona Rule of Criminal Procedure ("Rule") 11 competency determination, alleging Ramsey had schizophrenia and bi-polar disorder. The superior court ordered a Rule 11 evaluation and appointed Dr. Spector and Dr. Hernandez to evaluate Ramsey. Ramsey participated in Rule 11 evaluations with both experts who each issued a report opining that Ramsey was competent. Neither report acknowledged the history of mental illness cited by Ramsey's counsel. After reviewing the reports, Ramsey's counsel and the State stipulated that the superior court could decide the issue of Ramsey's competency based on the expert reports without a competency hearing. The superior court found Ramsey competent.

¶4        In March of 2024, almost two months after the competency ruling, Ramsey sent a letter to the superior court expressing general dissatisfaction with his counsel. In April of 2024, Ramsey filed a request to change counsel. During a hearing on the request, Ramsey equivocated about whether he wanted to change counsel. He eventually indicated he did not. The superior court decided Ramsey needed more time to consider his options and held the request in abeyance so Ramsey could decide what he wanted to do. Six days later, at another hearing, Ramsey elected to keep his current counsel.

**¶5**          In November of 2024, the superior court held a jury trial. Ramsey testified that two men confronted him in the laundromat, and that he only fired his gun in self-defense after one of the men shot first. But he also admitted that he pursued the victim after the victim fled, and continued to shoot after the victim fell to the ground. The jury found Ramsey guilty of two counts of aggravated assault and one count of disorderly conduct, but not guilty of one count of endangerment. Ramsey appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶6**          Ramsey argues the superior court erred in finding him competent to stand trial. First, he asserts that the competency evaluations were flawed because the expert reports did not mention the mental health history cited by his counsel. Second, he claims that his counsel should not have been allowed to stipulate to the court deciding competency based on the evaluations without holding a full competency hearing. Ramsey raises these issues for the first time on appeal. Ramsey and the State dispute the standard of review for these claims. Ramsey argues that his challenge to the competency evaluations should be reviewed for structural error, and his challenge to the lack of a competency hearing should be reviewed de novo. The State argues both claims are subject to fundamental-error review. "If no objection is made at trial, and the error alleged does not rise to the level of structural error, we review only for fundamental error." *State v. Valverde*, 220 Ariz. 582, 585, ¶ 12 (2009), *abrogated on other grounds by State v. Escalante*, 245 Ariz. 135 (2018). But we do not need to decide whether structural or fundamental error applies to either claim, because the superior court did not err. *State v. Diaz*, 223 Ariz. 358, 361, ¶ 12 (2010) (explaining that when a defendant fails to establish error, "we need not determine the applicable standard of review.").

**¶7**          Ramsey argues that because the experts in his case were not aware his counsel had claimed Ramsey had a history of schizophrenia and bi-polar disorder, they based their reports on incomplete information. He further asserts no one informed him of his right against self-incrimination in a Rule 11 hearing. *See* A.R.S. § 13-4508(A). But both expert reports noted Ramsey denied any history of mental illness and no other available health records suggested otherwise. The reports also stated Ramsey behaved appropriately during his evaluations and demonstrated he understood the legal process. Further, the reports noted that both experts reviewed the limits of confidentiality with Ramsey, and he agreed to participate in both evaluations. Ramsey does not point to anything in the record to suggest he

withheld information during the Rule 11 evaluations. And on appeal, Ramsey does not argue that the alleged prior diagnoses require a finding that he was incompetent to stand trial. Indeed, the mere presence of a mental illness is not enough on its own to render a defendant incompetent. A.R.S. § 13-4501(3); *see also State v. Moody*, 208 Ariz. 424, 444, ¶ 56 (2004). A defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and . . . he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). The expert reports contained sufficient information to allow the superior court to determine that Ramsey met these criteria. Accordingly, there is no error.

**¶8** Ramsey also argues his defense counsel should not have been allowed to stipulate to let the court determine competency based on the expert reports. We disagree. A defendant, through counsel, may waive the right to a competency hearing. *State v. Contreras*, 112 Ariz. 358, 359 (1975). Counsel may waive a competency hearing for his client, because "[c]ounsel stands in the stead of his client when representing the accused." *Id.* "If the defendant and the State stipulate in writing or on the record, the court may determine competence based solely on the experts' reports" without a competency hearing. Ariz. R. Crim. P. 11.5(a). A stipulation to determine competency based on expert reports satisfies due process, even when there are doubts about a defendant's competency. *State v. Escalante-Orozco*, 241 Ariz. 254, 268, ¶¶ 19–20 (2017), *abrogated in part on other grounds by Escalante*, 245 Ariz. 135 (2018).

**¶9** Ramsey points to a statement in *Contreras* noting there was "nothing in the record before us to indicate Contreras' dissatisfaction with his attorney, and therefore the attorney has his general authority to make such a waiver." 112 Ariz. at 359. Relying on that language, Ramsey argues his counsel could not enter such a stipulation because Ramsey had expressed concerns about his representation.

**¶10** Even if we accepted Ramsey's characterization of *Contreras*, we disagree that this record supports his argument. Ramsey points to statements he made during one of his competency evaluations that he had met with his counsel four times, and that he did not know about the competency hearing until two days before. He also stated his counsel "had liability concerns" about allowing him to testify in his own defense. Ramsey further asserts that he "clearly refused to answer [Dr. Spector's] question as to whether he trusted his lawyer." But none of those statements indicate Ramsey disapproved of his counsel's decisions regarding competency.

Throughout the competency process, Ramsey indicated he felt competent and suggested his counsel initiated the evaluations as a "formality." And when Dr. Spector asked if Ramsey trusted his lawyer, Ramsey expressed confidence his counsel would "successfully represent" him.

¶11 Ramsey also points to a letter that expresses dissatisfaction with his counsel, but he wrote that letter almost two months after his counsel's stipulation. And to the extent Ramsey's later communications addressed his counsel's actions regarding competency, Ramsey indicated he felt competent and did not want the superior court to find him incompetent. Ramsey's counsel's stipulation advanced this position. There is nothing in the record indicating Ramsey opposed his counsel's stipulation to determine his competency based on the expert reports. We find no error in the superior court accepting Ramsey's counsel's stipulation to determine Ramsey's competency based on the expert reports.

**CONCLUSION**

¶12 We affirm.



MATTHEW J. MARTIN • Clerk of the Court

**FILED**: JR

5